UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


UNITED STATES OF AMERICA,         CASE NUMBER 00-6318-CR-WPD

    Plaintiff,

vs.

EUGENE MIERAK,

    Defendant.
_____/



### **DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT; DEFENDANT'S SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF SENTENCING MITIGATION**

COMES NOW the Defendant, EUGENE MIERAK, by and through his undersigned attorney and files this his Objections to the Presentence Investigation Report (PSR) and submits this his Sentencing Memorandum And Brief In Support Of Sentencing Mitigation and states as follows:

1. The Defendant objects to Paragraph 5 of the PSR which states that he was in control of distributing the 400,000 tablets of the MDMA. This is contrary to the evidence and facts and is the opinion of Special Agent Brian J. Shanahan. Mr. Shanahan had worked for the Drug Enforcement Administration (DEA) for less than



two (2) years, having come from New York. In Paragraph 5 of his Complaint Affidavit filed in this cause, he states, "The CS said Jansen indicated that there was a lot of work to be done and that he looked forward to working with the CS. Additionally, Jansen informed the CS that a man known to the CS as Oswaldo would be arriving in the United States on another flight and would be assisting Jansen in selling the MDMA. Finally, Jansen agreed to front the CS approximately 50,000 tablets of MDMA, and if the CS was able to distribute the MDMA quickly, Jansen and his associates would front the CS another 50,000 tablets." This statement made in an Affidavit by the agent clearly indicates that Mr. Jansen, who had previous contact and dealings with the CS, was the primary individual in control of the distribution of any pills. The charges against this Defendant deal with a 50,000 pill transaction and he has at no time been charged with involvement in any 400,000 tablet transaction distribution. This information which Agent Shanahan now attributes to Mr. Mierak is false, inaccurate and contrary to the weight of the evidence. The statements attributed to Agent Shanahan were adopted and made part of Chief Magistrate Judge Snow's findings in her Pretrial Detention Order entered on the 26th day of October, 2000. Page 3 of Chief Magistrate Judge Snow's findings once again refers to Jansen indicating that Oswaldo would be arriving in the United States to assist in the

distribution. Again, Chief Magistrate Judge Snow refers to Jansen's agreement with the CS to front 50,000 tablets of MDMA which clearly establishes his control over the distribution network.

2. Defendant objects to that portion of Paragraph 6 of the PSR which refers to the CI relaying to the agent that the individuals with whom Jansen met in the informant's presence all were participants in any MDMA transaction. The CI spoke only English and the other individuals present had any conversations between themselves in Dutch. Thus, no conclusion can be drawn that there were more than three (3) participants in the distribution since the informant has no reliable ability to understand what was said.

3. The Defendant objects to Paragraph 7 wherein he is alleged to have told the CI anything about the owners of the pills being within Pure Platinum and/or that he told the CI that the owners would not front the pills to the CI and that he first had to deliver the $50,000.00 in order to obtain possession of same. The CI has been acknowledged to have a significant criminal history including previously having been convicted of murder and was, at the time of his assistance in this matter, awaiting sentencing on an MDMA distribution as a result of his arrest by the Palm Beach County Sheriff's Office. Additionally, in the Complaint Affidavit

3

as filed by Agent Shanahan, the cooperating informant had advised him that he had previously conducted business with Mr. Jansen and that, on that prior occasion, Jansen had provided the cooperating source with approximately 120,000 tablets of MDMA. Additionally, as is stated in Paragraph 9 of the PSR, all three defendants made telephone calls demanding payment for the MDMA.

4.  Defendant objects to Paragraph 11 and the conclusion rendered by the PSR that he is the most culpable and in control of 400,000 tablets of MDMA since this is not based upon any acts established independently. Contrary to the conclusions made in Paragraph 11, Mr. Jansen, throughout his contact initially with the cooperating source and as stated both in the Complaint Affidavit and in the findings of the Chief Magistrate Judge, was awaiting Mr. Renfrum's appearance in South Florida to assist him in the distribution. Any statements attributed to Mr. Jansen that it was Mr. Mierak who instructed him to secure contacts in the United States is both self-serving an factually inaccurate in light of the fact that the cooperating source, the agent and Mr. Jansen all have conceded that Mr. Jansen had dealt with the cooperating source prior to the transaction giving rise to the instant Indictment had in fact, as referred to in Paragraph 8 of the Complaint Affidavit filed by Agent Shanahan, previously provided the cooperating source with 120,000 tablets of MDMA. This was also part of the findings

4

in the Pretrial Detention Order referred to above. It should also be clear that the rental vehicle in which the drugs were located was driven by Mr. Jansen to the location in the Publix shopping center where the pills were ultimately located and that Mr. Mierak's responsibility was to conduct surveillance and that it was Jansen who gave the cooperating source the keys to the rental vehicle and told him that the pills were located in the trunk. This is contained on Page 5 of the Pretrial Detention Order.

5. This Defendant alleges that the application of the role assessment to him is disproportionate to his involvement in light of the consideration being given by the Probation Department to Mr. Jansen and further to Mr. Renfrum. Mr. Jansen was the primary distributor having had prior drug transactions with the cooperating source in this case and not being given an aggravating nor mitigating role adjustment. Mr. Jansen apparently feels that he has additional information and, upon information and belief, is seeking a §5K1.1. Mr. Renfrum, contrary to the picture painted by the PSR is closely aligned with Mr. Jansen in that there existed no mention of Mr. Mierak, the person who Mr. Jansen was originally waiting for, when his initial conversations occurred with the confidential source. Yet, Mr. Renfrum, based upon the analysis as contained in Paragraph 12 of the PSR, was not being aggravated but rather mitigated and was thus receiving the benefit as a minor

participant in this matter. Also, upon information and belief, Mr. Renfrum is seeking a §5K1.1 purportedly based upon his intricate knowledge of the distribution of MDMA. The application of an aggravating role assessment is misplaced and inappropriate and is solely based upon Agent Shanahan's opinion and not based upon credible evidence or facts.

   6.  The Defendant objects to Paragraph 13 in that, though Mr. Verschuren was arrested, he was not indicted and, though Mr. Eyob Michel's name has been mentioned, he was neither arrested nor indicted. Thus, any consideration of their purported participation in this case is not relevant nor material and is only sought to be applied to this Defendant and seek to raise this transaction to involve five or more participants which factually is inaccurate.

   7.  The Defendant objects to Paragraph 16 based upon a misunderstanding between the Defendant and counsel. Immediately upon receipt of the PSR on the 16th of January, 2001, counsel met with the Defendant and has since provided on January 18, 2001 a handwritten two-page letter of acceptance of responsibility and it is fully anticipated that, in light of the plea agreement and the Defendant's acknowledgment of his responsibility in this matter, he will receive the appropriate three (3) points for acceptance.

8. Defendant objects to Paragraph 20 to the extent that he was neither a manager nor supervisor in the instant offense as has been set forth in greater detail above. Further, the criminal activity does not involve five (5) or more participants and that the application of the aggravating role factually is inaccurate as applied to Mr. Mierak and that the "organization" was not otherwise extensive. Further, it is the Defendant's contention, as will be set forth later in this Memorandum, that he is entitled to a mitigating role pursuant to Section 3B1.2 in that he was a minimal participant in the criminal activity, having been present and having acted as surveillance. It is the Defendant's contention that he is plainly among the least culpable of those involved in the conduct of the group. It is clear that Mr. Jansen has full knowledge of distribution of narcotics and was awaiting Mr. Renfrum for whatever purpose to assist him. There is no evidence to show that the Defendant had any special knowledge or understanding of the scope and structure of the enterprise other than as provided to him through conversations with his co-defendant and/or with the confidential source. Should the Court not consider him as a minimal participant, he, at the very least, is a minor participant or falls between §3B1.2(a) and (b) and thus would entitled to a three-level reduction.

9.  The Defendant objects to Paragraph 22, the Adjusted Offense Level, based upon the arguments above.

10. The Defendant objects to Paragraph 24 in anticipation of a three-level reduction for acceptance of responsibility.

11. Defendant objects to Paragraph 25 based upon the various arguments above.

12. Defendant objects to Paragraph 55 pending a determination made by this Court as to the appropriate offense level based upon the anticipated receipt of acceptance of responsibility as well as more appropriate analysis as to role adjustment applicable in this cause.

13. Defendant further objects to the Presentence Investigation Report in that (1) it does not consider the defense or safety valve under U.S.S.G. §5C1.2 and §2D1.1(b)(6); in that (2) the offense level under §2D1.1 is 28 and that he has no prior criminal history points; (3) that there was no violence nor gun possession by the Defendant; (4) that the offense did not result in death nor serious injury; (5) that Defendant was neither a leader nor organizer under §3B1.1; and (6) that Defendant has made known to the Government previously that the only information he had was as it pertains to his knowledge of the defendants Jansen and Renfrum. The Defendant was approached about a §5K1.1 and advised the Government in a forthright manner that the only information he

8

had was as it pertains to Mr. Jansen and Mr. Renfrum. The fact that the Defendant cannot provide substantial assistance beyond that information already known to the Government should not preclude the application of a two-level reduction from the base offense level.

14. All matters contained in these Objections have been previously discussed with the federal probation officer, Donald Jefferson.

**LEGAL ARGUMENT**

It is the Defendant's legal contention in support of his Objections to the heretofore filed PSR as to enhancement or aggravating role that, pursuant to <u>United States vs. Brown</u>, 944 F.2d 1377 (7th Cir. 1991), "The mere status of middleman or distributor does not support an enhancement under Section 3B1.1 for being a supervisor, manager or leader." This rejected the Government's argument that the large quantity involved showed that the Defendant could be said to have exercised some control over his customers since purportedly the drugs were fronted on credit. This contradicts the evidence in this case. Further, <u>United States vs. Yates</u>, 990 F.2d 1179 (11th Cir. 1993), adopting the reasoning of the Seventh Circuit in <u>Brown</u>, held that a managerial role adjustment was clear evidence that the evidence showed that the defendant supplied several individuals, including a co-defendant, with

9

Dilaudid tablets weekly and that distributee further distributed tablets through other accomplices; this indicated nothing more than a continuing seller/buyer relationship between the seller and his distributee. See also United States vs. Maxwell, 34 F.3d 1006 (11th Cir. 1994). In United States vs. Lazano-Hernandez, 89 F.3d 785 (11th Cir. 1996), the Court vacated the managerial role increase since there was absolutely no evidence that the defendant supervised or controlled anyone. Additionally, United States vs. Miller, 91 F.3d 1160 (8th Cir. 1996), held that a managerial role was improper where the defendant was the supplier to his co-conspirators who later resold same. Controlling property does not make one an "organizer or leader"; finding that there was a significant absence of evidence that the Defendant controlled his buyers and their resale of Methamphetamine.

The Defendant contends that the unsworn conclusions of either the Assistant United States Attorney, the DEA Agent or the probation officer as to the role are not sufficient proof and lend no support for a factual determination to support Defendant's aggravating role adjustment. United States vs. Ellwood, 999 F.2d 814 (5th Cir. 1993); United States vs. Bernardine, 73 F.3d 1078, 1082 (11th Cir. 1996).

As far as the "otherwise extensive" activity, there is an insufficiency in the cases to provide a precise definition as to

10

what this term means. It has in the past been referred to when there is an extensive number of people involved in the enterprise and/or the activity continued over a long duration. It is respectfully suggested that this transaction and the context in which the Defendant is alleged to have participated does not meet this criteria.

The Defendant contends that he is entitled to an offense role adjustment downward rather than aggravation and/or safety valve consideration and the fact that Defendant has no additional relevant or useful information should not preclude a determination that he satisfies the safety valve criteria. He has always been available to be debriefed. However, the Defendant was not in a position to testify against any other individual as having participated in the transaction. This is consistent with those circumstances where a defendant can still get safety valve even after trial should they testify and lose. United States vs. Sherpa, 110 F.3d 656, 661 (9th Cir. 1996). Where a defendant maintains their innocense though still qualifies for safety valve. United States vs. Shrestha, 86 F.3d 935, 939 (9th Cir. 1996). The Defendant further contends that the sentences to be imposed amongst the three Defendants has created a wide disparity between what could be this Defendant's sentence, should the Court adopt the present evaluation of the relative responsibility of the parties.

11

It is the Defendant's contention that the disparities are resulting from plea agreements and PSR's and that the unjustified disparities are not based upon fact nor evidence but rather upon law enforcement desires to benefit those with whom it has aligned itself, retreating from their own prior assessments and/or conclusions. Upon information and belief, the offense conduct has primarily been relayed to the probation department by Special Agent Brian Shanahan whose personal and professional displeasure with Defendant Mierak's inability to provide further information has resulted in him completely negating Jansen's overall level of responsibility, access and prior drug dealing with Shanahan's cooperating informant. It is suggested that this Defendant's sentence and the disparity created by it could take the case out of the heartland of the guidelines and that departure cannot be appropriate based upon this disparity. <u>United States vs. Willis</u>, 1998 Westlaw 184347 (11th Cir. 1998).

WHEREFORE, Defendant, having filed this his Objections to the heretofore filed Presentence Investigation Report and having objected to the aggravating role adjustment and having sought a mitigating role adjustment and/or consideration of the safety valve application, respectfully requests this Honorable Court to grant his objections upon the grounds set forth herein and, further, to

determine application of the safety valve and mitigation as requested.

I HEREBY CERTIFY that a copy of the foregoing has been furnished, by mail, this 22nd day of January, 2001 to: Jeffrey Kay, Assistant U.S. Attorney, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, FL 33394; and by fax/mail to Donald Jefferson, United States Probation Officer, 300 NE First Avenue, Room 315, Miami, FL 33132.

>LYONS AND SANDERS CHARTERED
>Counsel for Defendant
>600 NE Third Avenue
>Fort Lauderdale, FL 33304
>Telephone: (954)467-8700
>Facsimile: (954)763-4856
>
>BY: _____
>HOWARD L. GREITZER
>FLORIDA BAR NO. 249505

13